# United States Court of Appeals
## For the First Circuit

No. 20-1066

JOHN R. BORZILLERI, M.D., Relator,

Plaintiff, Appellant,

UNITED STATES, ex rel. JOHN R. BORZILLERI, M.D.,

Plaintiff, Appellee,

STATE OF CALIFORNIA, et al.,

Plaintiffs,

v.

BAYER HEALTHCARE PHARMACEUTICALS, INC., et al.,

Defendants, Appellees,

CATAMARAN CORPORATION, et al.,

Defendants.

---

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

[Hon. William E. Smith, U.S. District Judge]

---

Before

Thompson, Lipez, and Kayatta,
Circuit Judges.

---

Mary Ann H. Smith for appellant.

Amy R. Romero, Assistant United States Attorney, with whom Aaron L. Weisman, United States Attorney, was on brief, for appellee United States.

Jeffrey S. Bucholtz, Jeremy M. Bylund, King & Spalding LLP, Steven P. Lehotsky, Tara S. Morrissey, and U.S. Chamber Litigation Center on brief for the Chamber of Commerce of the United States of America, amicus curiae.

---

January 21, 2022

---

**LIPEZ, Circuit Judge.** In this case of first impression for our circuit, we consider the function of the hearing that is provided by statute when the government moves to dismiss a relator's qui tam action brought under the False Claims Act ("FCA") over the relator's objections. See 31 U.S.C. § 3730(c)(2)(A). The statute is silent as to the nature of that hearing, the government's burden in seeking dismissal, and the factors the district court should consider in evaluating the motion to dismiss. After considering the FCA as a whole and the various approaches that have been adopted by other circuits, we conclude that (i) although the government does not bear the burden of justifying its motion to the court, the government must provide its reasons for seeking dismissal so that the relator can attempt to convince the government to withdraw its motion at the hearing; and (ii) if the government does not agree to withdraw its motion, the district court should grant it unless the relator can show that, in seeking dismissal, the government is transgressing constitutional limitations or perpetrating a fraud on the court.

Applying these conclusions to the facts of this case, we determine that the district court did not err in dismissing the action and affirm.

I.

**A. Legal Background**

The FCA imposes civil liability on any person who "knowingly presents," "causes to be presented," or conspires to present "a false or fraudulent claim for payment or approval" to the United States government. 31 U.S.C. § 3729(a)(1)(A), (C). The Act not only authorizes the government to bring a civil action against anyone who violates the statute, id. § 3730(a), but also allows a private party -- a "relator" -- to bring what is known as a qui tam action "for the person and for the United States [g]overnment . . . in the name of the [g]overnment," id. § 3730(b)(1). See Kellogg Brown & Root Servs., Inc. v. United States ex rel. Carter, 575 U.S. 650, 653 (2015).

When a relator brings a qui tam action, he must serve the government with a copy of the complaint and "written disclosure of substantially all material evidence and information" he possesses. 31 U.S.C. § 3730(b)(2). The complaint is filed under seal for at least sixty days (the government may seek extensions for good cause), and it may not be served on the defendant until the court so orders. Id. § 3730(b)(2), (3). Before the complaint is unsealed, the government has two options. It may "intervene and proceed with the action" itself, in which case it has "the primary responsibility for prosecuting" it, although the relator has "the right to continue as a party to the action"; or the

government may notify the court that it declines to "take over the action," in which case the relator "shall have the right to conduct the action." Id. § 3730(b)(2), (b)(4), (c)(1).

Even if the government initially declines to intervene, the court "may nevertheless permit the [g]overnment to intervene at a later date upon a showing of good cause." Id. § 3730(c)(3). If the government conducts the action, the relator may receive up to twenty-five percent of any proceeds recovered, plus reasonable expenses, attorneys' fees, and costs. Id. § 3730(d)(1). If the relator conducts the action, his potential maximum recovery increases to thirty percent. Id. § 3730(d)(2).[1]

The qui tam provision is "designed to set up incentives to supplement government enforcement" of the FCA. United States ex rel. Springfield Terminal Ry. Co. v. Quinn, 14 F.3d 645, 649 (D.C. Cir. 1994). The Supreme Court has explained that the "for the person and for the United States [g]overnment" language in the statute "gives the relator himself an interest in the lawsuit, and not merely the right to retain a fee out of the recovery." Vt. Agency of Nat. Res. v. United States ex rel. Stevens, 529 U.S.

[1] The court may reduce a relator's share of the proceeds if it finds that the relator "planned and initiated the violation" of the FCA underlying the action. 31 U.S.C. § 3730(d)(3). If the relator is convicted of criminal conduct stemming from his role in the violation, he "shall be dismissed" from the action and "shall not receive any share of the proceeds." Id.

765, 772 (2000). The statute thus "entitles the relator to a hearing before the [g]overnment's voluntary dismissal of the suit" when the relator and the government disagree about whether, or when, to pursue the FCA action. Id. (citing 31 U.S.C. § 3730(c)(2)(A)).

Specifically, the FCA states: "The [g]overnment may dismiss the action notwithstanding the objections of the person initiating the action if the person has been notified by the [g]overnment of the filing of the motion and the court has provided the person with an opportunity for a hearing on the motion." 31 U.S.C. § 3730(c)(2)(A). The statute is silent, however, as to the nature of that hearing, the government's burden, and the factors the district court should consider in evaluating the government's motion to dismiss.

Courts have attempted to fill this statutory lacuna, with divergent approaches by the Ninth Circuit and the D.C. Circuit attracting the most discussion.[2] The Ninth Circuit has held that the district court at a § 3730(c)(2)(A) hearing must undertake a multi-step analysis to evaluate the government's motion to dismiss. The government must first identify "a valid government purpose" for the dismissal and demonstrate "a rational relation

[2] We discuss a third approach, taken by the Seventh and Third Circuits, below. See infra Section II.

between dismissal and accomplishment of the purpose." United States ex rel. Sequoia Orange Co. v. Baird-Neece Packing Corp., 151 F.3d 1139, 1145 (9th Cir. 1998) (internal quotation marks omitted). If the government can meet its burden, the burden then shifts to the relator to show that the "dismissal is fraudulent, arbitrary and capricious, or illegal." Id. (internal quotation marks omitted); see also Ridenour v. Kaiser-Hill Co., 397 F.3d 925, 936 (10th Cir. 2005) (adopting the Sequoia Orange standard).

By contrast, the D.C. Circuit has held that § 3730(c)(2)(A) "give[s] the government an unfettered right to dismiss an action," and that "the function of a hearing when the relator requests one is simply to give the relator a formal opportunity to convince the government not to end the case." Swift v. United States, 318 F.3d 250, 252-53 (D.C. Cir. 2003). However, the Swift court left open the possibility that a showing of "fraud on the court," or some other similar consideration, might be the basis for denial of the government's motion notwithstanding the government's "unfettered" discretion. See id. at 253. And other courts that have generally agreed with Swift that the Sequoia Orange standard places too much of a burden on the government's right to dismiss an action have suggested that a district court could deny the government's motion if dismissal would violate the Constitution or perpetrate a "fraud on the court." See United

States ex rel. CIMZNHCA, LLC v. UCB, Inc., 970 F.3d 835, 851-52 (7th Cir. 2020).[3]

**B. Facts & Procedural Background**

Relator-appellant John R. Borzilleri, a physician and professional healthcare investment fund manager, alleges that several pharmaceutical companies ("Manufacturer Defendants") and Pharmacy Benefit Managers ("PBM Defendants") colluded to defraud Medicare Part D, a federal prescription drug program, in violation of the FCA, the common law, and various state-law analogues to the FCA.[4] In brief, he contends that the Manufacturer Defendants (which set drug prices) and the PBM Defendants (which administer access to the drugs for most Americans) colluded to drive up the

---

[3] At least two courts of appeals have noted the split among the circuits but have avoided weighing in. See United States ex rel. Borzilleri v. AbbVie, Inc., 837 F. App'x 813, 816 & n.1 (2d Cir. 2020) (summary order) ("[W]e do not decide which standard should govern, as the relator fails even the more stringent Sequoia standard."); United States ex rel. Health Choice All. v. Eli Lilly & Co., 4 F.4th 255, 267 (5th Cir. 2021) (assuming without deciding that the Sequoia Orange standard applies and holding that dismissal was proper even under that "more burdensome test").

[4] The Manufacturer Defendants are: Bayer Healthcare Pharmaceuticals, Inc.; Biogen, Inc.; EMD Serono, Inc.; Novartis Pharmaceuticals Corporation; Pfizer, Inc.; Teva Neuroscience, Inc.; and Teva Pharmaceuticals USA, Inc. The PBM Defendants are: Aetna, Inc.; Cigna Corporation; CVS Health Corporation; Express Scripts Holding Company; Humana, Inc.; and UnitedHealth Group, Inc.

price of multiple sclerosis therapeutics through "service fee" contracts.[5]

Borzilleri filed a qui tam complaint under seal in the District of Rhode Island in 2014.[6] In 2018, the government declined to intervene (apparently after being granted a number of extensions to make its decision pursuant to 31 U.S.C. § 3730(b)(3)) and the complaint was unsealed. Eventually, the Manufacturer Defendants and the PBM Defendants moved to dismiss the case. Shortly thereafter, the government moved to dismiss under 31 U.S.C. § 3730(c)(2)(A), stating, inter alia, that (1) "the continued litigation of [Borzilleri's suit] . . . is likely to require substantial expenditure of government resources . . . both to monitor the progress of the [suit] and as a third-party participant in discovery . . . [and] will tax the federal agency component

[5] The precise mechanics of the scheme as alleged by Borzilleri are outlined in his 159-page second amended complaint.

[6] In 2015, Borzilleri filed a parallel qui tam suit in the Southern District of New York. The government asserts that from 2014 to 2018, "the U.S. Attorney's Office for the District of Rhode Island, working along with the U.S. Attorney's Office for the Southern District of New York, the Fraud Section of the Department of Justice's Civil Division, and investigators from multiple federal agencies, undertook a detailed multi-year investigation of Borzilleri's allegations." The government also declined to intervene in the Southern District of New York action; that court granted the government's motion to dismiss, see United States ex rel. Borzilleri v. AbbVie, Inc., No. 15-CV-7881 (JMF), 2019 WL 3203000, at *3 (S.D.N.Y. July 16, 2019); and the dismissal was affirmed on appeal, see AbbVie, Inc., 837 F. App'x at 817.

that oversees the Part D program"; (2) the government "has carefully investigated Relator's claims . . . and has concluded that many key aspects of his allegations are not supported"; and (3) Borzilleri's actions, including "allegations that he has used the qui tam process to leverage his financial interests through securities trading," have "convince[d] the [g]overnment that he is not an appropriate advocate of the United States' interests in this action."

Borzilleri objected to the dismissal and filed a declaration asserting, inter alia, that the government had failed to investigate key aspects of his allegations. The district court subsequently held a hearing, at which it pressed Borzilleri's counsel to

> come forward with some kind of showing that the government's decision [to dismiss the suit] is fraudulent or arbitrary, capricious or illegal in some fashion. Not just that you disagree with it and not just that you think that Dr. Borzilleri's argument had merit that the government, for whatever reason, failed to see, but you've got to come up with something pretty powerful that shows me that the government is acting in a fraudulent or illegal manner here.

In response, Borzilleri's counsel argued that the government had not performed an adequate investigation of the alleged fraud and had determined that the suit did not allege FCA violations only "because [the government] didn't look in the right place."

In a post-hearing minute order, followed by a written decision, the district court dismissed Borzilleri's FCA claims with prejudice as to Borzilleri and without prejudice as to the government.[7] The district court recognized that the standard for considering a motion to dismiss by the government at a § 3730(c)(2)(A) hearing is a subject of debate among the circuit courts and that the First Circuit had not yet addressed the issue. See United States ex rel. Borzilleri v. Bayer HealthCare Pharms., Inc., C.A. No. 14-031 WES, 2019 WL 5310209, at *1 (D.R.I. Oct. 21, 2019). The court concluded, however, that it did not need to choose from among the different approaches because it determined that dismissal was appropriate even under the "stricter standard" adopted by the Ninth Circuit. Id. at *2. The court noted that

[7] Neither party on appeal challenges the type of dismissal ordered by the district court, and Borzilleri does not challenge the dismissal without prejudice of his state law claims. Nor does Borzilleri suggest on appeal that the government was required to move to intervene, and show "good cause" for doing so, before filing its motion to dismiss. See CIMZNHCA, 970 F.3d at 842-49 (considering this issue at length). We note, however, that we see logic in the D.C. Circuit's observation that "the question whether the [FCA] requires the government to intervene before dismissing an action is largely academic," because "if there were such a requirement, we could construe the government's motion to dismiss as including a motion to intervene, a motion the district court granted by ordering dismissal." Swift, 318 F.3d at 252; see also CIMZNHCA, 970 F.3d at 849 (determining that the FCA requires the government to intervene before moving to dismiss but ultimately "treat[ing] the government's motion to dismiss as a motion both to intervene and then to dismiss"); Polansky v. Exec. Health Res. Inc., 17 F.4th 376, 392-93 (3d Cir. 2021) (same).

the government had provided a rational reason for dismissal -- "the burden this continuing litigation would place on the [g]overnment's resources" -- and Borzilleri had not shown that dismissal would be "fraudulent, arbitrary and capricious, or illegal." Id. at *2-3 (internal quotation marks omitted). The court also denied his request for discovery and an evidentiary hearing. Borzilleri timely appealed.

**II.**

Although Borzilleri contends that the standard articulated by the Ninth Circuit for a court's review of a government motion to dismiss a qui tam suit should apply in this case, he also asserts that the district court's decision fails under any of the standards that courts have applied. Given the need to clarify for the district courts their role when an objecting relator invokes the "opportunity for a hearing" provided by § 3730(c)(2)(A), we address that issue before addressing Borzilleri's specific contentions about the dismissal of his suit.

As noted above, although the FCA mandates a hearing at the behest of an objecting relator before a court may grant a government motion to dismiss a qui tam suit, the statute does not specify the nature of the hearing, the government's burden, or the factors a court should consider in evaluating the motion. Nevertheless, we agree with Borzilleri's premise that the statute plainly anticipates the exercise of some form of judicial

discretion. Obtaining an impartial adjudicator's decision after parties air their competing views is, after all, the ordinary purpose of a "hearing." See Hearing, Black's Law Dictionary (11th ed. 2019) (defining a "hearing" as a "judicial session . . . held for the purpose of deciding issues of fact or of law"). We are confident that Congress would not mandate an opportunity for a hearing so that the court could only "serve . . . donuts and coffee" while the relator and the government debate the merits of dismissal. CIMZNHCA, 970 F.3d at 850 (internal quotation marks omitted).

Further, the statute by its terms indicates that the hearing requirement is intended, at least in part, to protect the relator's interests. The provision focuses on the relator, stating that the government may dismiss the action "if the [qui tam relator] has been notified by the [g]overnment of the filing of the motion and the court has provided the person with an opportunity for a hearing on the motion." 31 U.S.C. § 3730(c)(2)(A) (emphasis added). Hence, we conclude that the statute contemplates a judicial judgment of some kind, providing a level of protection for the relator's interest in the suit. See Stevens, 529 U.S. at 772 (stating that the FCA "gives the relator himself an interest in the lawsuit, and not merely the right to retain a fee out of the recovery").

The nature of that judicial judgment is the more difficult question. Because § 3730(c)(2)(A) itself does not provide further guidance, we turn to the surrounding statutory provisions for interpretive assistance. See City of Providence v. Barr, 954 F.3d 23, 31 (1st Cir. 2020) ("The context surrounding a statutory provision and the structure of the statutory scheme as a whole often provide useful indicators of congressional intent.").

The FCA provision that immediately follows § 3730(c)(2)(A) -- § 3730(c)(2)(B) -- authorizes the government to settle a qui tam action over the objections of the relator so long as the court "determines, after a hearing, that the proposed settlement is fair, adequate, and reasonable under all the circumstances." The absence of such detailed language in § 3730(c)(2)(A) strongly suggests that Congress did not intend to condition the granting of the government's motion to dismiss on a judicial determination of fairness or reasonableness. See State Farm Fire & Cas. Co. v. United States ex rel. Rigsby, 137 S. Ct. 436, 442 (2016) ("This Court adheres to the general principle that Congress' use of 'explicit language' in one provision 'cautions against inferring' the same limitation in another provision." (quoting Marx v. Gen. Revenue Corp., 568 U.S. 371, 384 (2013))). Indeed, it makes sense that Congress would provide for more stringent review of a settlement than of a motion to dismiss. A

dismissal often allows for a new action to be brought later -- if the dismissal is without prejudice -- while a settlement ordinarily bars subsequently filed claims. See RFF Fam. P'ship, LP v. Ross, 814 F.3d 520, 532 (1st Cir. 2016). For this reason, then, any standard pursuant to which the district court performs a searching inquiry into the fairness or reasonableness of the government's motion to dismiss is inapt for § 3730(c)(2)(A).

Nor do we consider the Ninth Circuit's Sequoia Orange standard to be appropriate. That standard puts the burden on the government to justify its motion to dismiss. See Sequoia Orange, 151 F.3d at 1145 (requiring that the government identify "a rational relation between dismissal and accomplishment of [a valid government] purpose" (internal quotation marks omitted)). But the FCA does not allocate such a burden to the government. We simply see no basis in the statutory language for requiring the government to make a prima facie showing that its motion is rational, reasonable, or otherwise proper.[8]

---

[8] As the government notes, the Sequoia Orange court, in adopting a standard originally proposed by the district court, cited a Senate Report related to the False Claims Amendments Act of 1986. See Sequoia Orange, 151 F.3d at 1145 (citing S. Rep. No. 99-345, at 26 (1986), reprinted in 1986 U.S.C.C.A.N. 5266, 5291). We agree with the D.C. Circuit that this portion of the Senate report, which "relates to an unenacted Senate version of the 1986 amendment," does not support reading so much into the statutory text. Swift, 318 F.3d at 253; see also United States ex rel. Bledsoe v. Cmty. Health Sys., Inc., 342 F.3d 634, 648 (6th Cir. 2003) (explaining that the court was "not persuaded" on the meaning

In puzzling out the meaning of the § 3730(c)(2)(A) hearing requirement, some courts have turned for guidance to Federal Rule of Civil Procedure 41, which generally governs the voluntary dismissal of civil suits. See CIMZNHCA, 970 F.3d at 849-50; Polansky v. Exec. Health Res. Inc., 17 F.4th 376, 387-90 (3d Cir. 2021) (adopting the Seventh Circuit's approach). Rule 41(a)(1)(A) provides that, "[s]ubject to . . . any applicable federal statute," a plaintiff may dismiss an action without a court order either where all parties who have appeared have signed a stipulation of dismissal or where the opposing party has not yet filed an answer or a motion for summary judgment. Fed. R. Civ. P. 41(a)(1)(A). Absent a federal law to the contrary, a district court has "no power to condition" a dismissal of this kind. Universidad Cent. Del Caribe, Inc. v. Liaison Comm. on Med. Educ., 760 F.2d 14, 19 (1st Cir. 1985). If there is no stipulation of

---

of another qui tam provision by the "quoted passage of the Senate Report . . . [seemingly] refer[ring] to an earlier draft of the 1986 FCA amendments"). We are similarly unpersuaded by Borzilleri's suggestion in his reply brief and at oral argument that we should base our decision on one senator's post-enactment statements regarding congressional intent behind the 1986 FCA amendments. See Rhode Island v. Narragansett Indian Tribe, 19 F.3d 685, 699 (1st Cir. 1994)("T]he overarching rule is that 'statements by individual legislators should not be given controlling effect'; rather, such statements are to be respected only to the extent that they 'are consistent with the statutory language.'" (quoting Brock v. Pierce Cnty., 476 U.S. 253, 263 (1986))).

dismissal and the defendant has already filed a responsive pleading, Rule 41(a)(2) provides that the suit may only be dismissed "by court order, on terms that the court considers proper." See Fed. R. Civ. P. 41(a)(2).

In CIMZNHCA, the Seventh Circuit concluded that, in the qui tam context, Rule 41 indicates that a dismissal sought by the government before the defendant has responded merely requires that an opportunity for a hearing be provided to the relator -- even if no particular judicial determination must necessarily be made at that hearing. On the other hand, where the defendant has already responded to the suit, the hearing would be an opportunity for the court to determine what terms of dismissal are "proper." See CIMZNHCA, 970 F.3d at 849-51.

We are unpersuaded by this application of Rule 41 to the unique context of a qui tam action. Section 3730(c)(2)(A) on its face creates a specific notice and hearing requirement that operates in addition to the requirements of Rule 41 regardless of whether the defendant has responded to the qui tam suit. See id. at 850 (discussing § 3730(c)(2)(A) as an "applicable federal statute" that adds a hearing requirement to the Rule 41 framework); see also Fed. R. Civ. P. 41 advisory committee's note to 1937 adoption (noting that Rule 41 preserves the FCA's "[p]rovisions regarding dismissal"). Further, the Rule 41 "terms that the court considers proper" standard is inapt in the context of

§ 3730(c)(2)(A). The overriding concern behind the "proper terms" standard is the potential prejudice to the defendant from a voluntary dismissal by the plaintiff. See, e.g., Doe v. Urohealth Sys., Inc., 216 F.3d 157, 160-61 (1st Cir. 2000). This standard is inapposite to the qui tam relator's unique situation as, in effect, an objecting co-plaintiff. See Sequoia Orange, 151 F.3d at 1145 (concluding that Rule 41 is inapplicable because it "protects defendants from vexatious plaintiffs" while, in the context of § 3730(c)(2)(A), "the plaintiffs, or relators, seek protection from the dismissal decision of the real party in interest, the government, under a specific statute establishing unique relationships among the parties"). Rule 41 is therefore not an appropriate guide for interpreting the distinct requirements of § 3730(c)(2)(A).

We thus find limited insight into the role of the court at the § 3730(c)(2)(A) hearing -- and the related question of the government's burden -- in either the FCA itself or in the federal rule governing motions for voluntary dismissal. The few clues we have found, however, counsel against the wholesale adoption of the primary approaches used by other courts -- in particular, the Ninth Circuit's burden allocation approach, see Sequoia Orange, 151 F.3d at 1145; or the Seventh and Third Circuits' Rule-41-based approach, see CIMZNHCA, 970 F.3d at 849-50; Polansky, 17 F.4th at

387-90. Instead, we take a different approach consistent with the statutory language and well-established principles of law.

**III.**

As we have indicated, we reject placing an initial burden on the government to justify its motion because the statutory language does not support the imposition of such a burden. That said, the government is not obligation-free when it moves to dismiss a qui tam suit -- it must provide its reasons for its decision. The need for an explanation is implicit in the statute's requirement that, before dismissal is granted, the relator be given an "opportunity" for a hearing on the motion. See 31 U.S.C. § 3730(c)(2)(A). We agree with the D.C. Circuit that one purpose of the hearing is to provide the relator a "formal opportunity to convince the government not to end the case." Swift, 318 F.3d at 253. That purpose cannot be achieved if the relator is unaware of the government's reasons for dismissal and, thus, is unable to challenge them. Therefore, we conclude that the government must always provide its reasons for seeking dismissal when it so moves.

The question then becomes, what is the role of the court at a § 3730(c)(2)(A) hearing if the relator fails to convince the government to withdraw its motion? Congress's silence on this issue, and the absence of analogous contexts from which to draw guidance, lead us to conclude that the court's role is to apply commonly recognized principles for assessing government conduct -

- the well-established "background constraints on executive action." CIMZNHCA, 970 F.3d at 851. That is, the district court at a § 3730(c)(2)(A) hearing should grant the government's motion to dismiss unless the relator, having failed to persuade the government to withdraw its motion, can show that the government's decision to seek dismissal of the qui tam action transgresses constitutional limitations or that, in moving to dismiss, the government is perpetrating a fraud on the court.

It is axiomatic that constitutional limitations attend any exercise of executive authority. See United States v. Armstrong, 517 U.S. 456, 464 (1996). This is the case even for a government decision not to institute an enforcement action -- a decision roughly analogous to the government's decision to dismiss a qui tam suit -- where the government is entitled to the greatest discretion. See Heckler v. Chaney, 470 U.S. 821, 838 (1985) (holding that agency decisions not to institute enforcement proceedings are unreviewable under the APA but reserving the question of the reviewability of a claim that an agency decision not to institute proceedings "violated any constitutional rights"); see also CIMZNHCA, 970 F.3d at 851 ("[T]here are always background constraints on executive action, even in the quasi-prosecutorial context of qui tam actions and the decisions to dismiss them."). For example, we think it beyond debate that the government could not dismiss a qui tam action if its decision to

seek dismissal is "based on 'an unjustifiable standard such as race, religion, or other arbitrary classification'" in violation of equal protection principles. Armstrong, 517 U.S. at 464 (quoting Oyler v. Boles, 368 U.S. 448, 456 (1962)).

The limitations on the government's right to dismiss a qui tam suit also would include instances in which the dismissal would be "arbitrary in the constitutional sense." Cnty. of Sacramento v. Lewis, 523 U.S. 833, 846 (1998) (quoting Collins v. City of Harker Heights, 503 U.S. 115, 129 (1992)). Government action is "arbitrary in the constitutional sense" when it "violate[s] a right otherwise protected by the substantive Due Process Clause" and "shock[s] the conscience," Martínez v. Cui, 608 F.3d 54, 64 (1st Cir. 2010), or when government officials abuse their power and "employ[] it as an instrument of oppression" to the extent that it "shocks the conscience," Lewis, 523 U.S. at 846 (quoting Collins, 503 U.S. at 126).

The district court should also deny the government's motion if the relator can show that, in moving to dismiss the qui tam action, the government is attempting to perpetrate a fraud on the court. See CIMZNHCA, 970 F.3d at 852; Swift, 318 F.3d at 253 (entertaining, but not deciding, that possibility). Courts always "possess[] the inherent power to deny the court's processes to one who defiles the judicial system by committing a fraud on the court." Aoude v. Mobil Oil Corp., 892 F.2d 1115, 1118 (1st Cir.

1989). Generally, "fraud on the court" describes a party's "unconscionable scheme calculated to interfere with the judicial system's ability impartially to adjudicate a matter by improperly influencing the trier or unfairly hampering the presentation of the opposing party's claim or defense." Id. (finding "fraud on the court" where a party knowingly submitted a fabricated document with its pleadings). Simply put, "fraud on the court" is egregious conduct that is more serious than the mere making of "[i]naccurate assertions in lawsuits." Torres v. Bella Vista Hosp., Inc., 914 F.3d 15, 19 (1st Cir. 2019).

Borzilleri points to the FCA provision stating that "[t]he Attorney General diligently shall investigate a violation" of the FCA, 31 U.S.C. § 3730(a), to argue that the district court should assess the government's "diligence" before dismissing a qui tam suit. However, using § 3730(a)'s general statutory directive to the government to create a "diligence" standard in § 3730(c)(2)(A) is problematic for several reasons.

First, and most importantly, a "diligence" inquiry is not even hinted at in the text of § 3730(c)(2)(A). Second, a searching "diligence" inquiry would necessarily require the court to review investigatory decisions over which the government ordinarily retains wide discretion. See Chaney, 470 U.S. at 831-32. It would be odd to have courts micromanage government investigations when the statute also provides that the government

ultimately has discretion whether to pursue any false claims that it identifies through those investigations. See 31 U.S.C. § 3730(a) ("If the Attorney General finds that a person has violated or is violating [the FCA], the Attorney General may bring a civil action under this section against the person." (emphasis added)). Indeed, we cannot identify any reported cases -- and Borzilleri has not pointed to any -- in which the "diligent investigation" language has been used as a substantive standard constraining government action. Third, assessing the government's diligence concerning a complex FCA suit like Borzilleri's could result in a time-consuming mini-trial -- a process that would be especially inappropriate where, as here, the government is claiming that the relator's suit will be a drain on government resources and is unlikely to result in recovery. Fourth, the FCA does not necessarily prevent the government from later filing suit to pursue the substance of the claims in a dismissed qui tam action if the government later determines that such a suit is appropriate. See, e.g., United States v. L-3 Commc'ns EOTech, Inc., 921 F.3d 11, 14-16 (2d Cir. 2019) (describing a dispute over recovery that arose when the government filed and settled an FCA suit after the dismissal of a qui tam action based on the same allegations). A deep dive into the government's investigatory strategy at a § 3730(c)(2)(A) hearing -- including the question of why the government believes the pending qui tam suit is not the best

vehicle for addressing potential FCA violations -- could prematurely reveal sensitive details of the government's investigation to the defendants, thus ultimately hampering FCA enforcement. We see no reason to adopt an extra-textual standard that would not necessarily advance, and may hinder, the purposes of the FCA.[9]

We emphasize again that the burden is always on the relator to demonstrate that the government is transgressing constitutional limits or perpetrating a fraud on the court. Moreover, if the relator seeks discovery to establish such improprieties, the court may grant that request only if the relator makes a substantial threshold showing to support his claims. See Swift, 318 F.3d at 254 (describing the standard for demonstrating "entitle[ment] to discovery of information relating to

[9] Borzilleri also points to another of the FCA's provisions, § 3730(b)(1), which authorizes relators to bring suit under the FCA in the government's name and provides, "The action may be dismissed only if the court and the Attorney General give written consent to the dismissal and their reasons for consenting." To the extent Borzilleri seeks to derive some sort of substantive constraint on the government from this provision, his argument is unavailing. Given the existence of § 3730(c)(2)(A) in the statutory scheme, it is clear that (b)(1) only applies where the relator moves to dismiss a suit he has brought in the government's name. See Minotti v. Lensink, 895 F.2d 100, 104 (2d Cir. 1990) (per curiam) ("[T]he consent provision ensures that legitimate claims against an alleged wrongdoer are not dismissed before the United States has been notified of the claims or has had an opportunity to proceed with the action."). If (b)(1) is at all relevant to our analysis, it only serves to highlight the lack of stringent requirements for dismissal in § 3730(c)(2)(A).

prosecutorial decisions"); see also United States v. Everglades Coll., Inc., 855 F.3d 1279, 1290 (11th Cir. 2017) (discussing discovery in the context of 31 U.S.C. § 3730(c)(2)(B)). Where the relator cannot make that showing -- and cannot otherwise support his claim of impropriety by the government -- the district court should grant the government's motion to dismiss.

In summary, the § 3730(c)(2)(A) hearing has two purposes: (1) providing an opportunity for the relator to attempt to convince the government to withdraw its motion to dismiss; (2) allowing the court to assess any claim by the relator that, in seeking dismissal, the government is transgressing constitutional limitations or perpetrating a fraud on the court. If the relator seeks discovery to support his claim of impropriety by the government, the court may grant the request only if the relator makes the substantial threshold showing noted above. Because the circumstances leading to a finding that the government is transgressing constitutional limits or committing a fraud on the court are necessarily case-specific, we leave further elaboration of these concepts to future cases. Such circumstances may only rarely be presented when the government moves to dismiss a qui tam suit. Nonetheless, the § 3730(c)(2)(A) hearing is a meaningful opportunity for the relator to challenge the government's motion

on the grounds we have identified.[10] See CIMZNHCA, 970 F.3d at 853 ("Whenever a party has the right to invoke the court's aid, it has the obligation to do so with at least a non-frivolous expectation of relief under the governing substantive law. That is not always possible, but that does not make the right meaningless." (citation omitted)).

**IV.**

Turning at last to the merits of the appeal, we review de novo Borzilleri's contention that the district court erred in dismissing his suit because he raised deficiencies in the government's investigation,[11] cognizant that we may affirm on any basis apparent in the record. Chiang v. Verizon New Eng., Inc., 595 F.3d 26, 34 (1st Cir. 2010).

---

[10] Although we have identified two specific grounds that may provide a basis for denying the government's motion to dismiss, we do not foreclose the possibility that there are other grounds that might be cognizable by a court in future cases. However, we emphasize that any such grounds would have to involve government wrongdoing comparable in severity to the wrongdoing required to establish a constitutional transgression by the government or fraud on the court.

[11] Both parties appear to assume we will apply de novo review to the district court's decision on the government's motion to dismiss. Without the benefit of briefing on this subject, and in the absence of a developed consensus on this issue in our sister circuits, we make no judgment on the appropriateness of that assumption. Instead, we assume, without deciding, that the applicable standard of review is de novo and engage in that plenary review, to Borzilleri's benefit.

Borzilleri details several interactions he had with government officials that he claims reveal a failure by the government to thoroughly investigate his allegations. He further argues that these interactions show "a high likelihood of investigative fraud" by the government, although he offers no details about that potential fraud. Hence, we understand his fraud argument to be a reiteration of his claim of investigative inadequacy and a reflection of his belief that the government should have further pursued, rather than dismissed, what he saw as a promising qui tam action potentially worth billions of dollars. Finally, Borzilleri maintains that the alleged investigative deficiencies reflect arbitrariness in the government's decision to dismiss the action. Taken together, these arguments echo Borzilleri's overarching theme that the government failed to pursue his FCA claims to the extent or in the manner he would have liked.

The government represented that it conducted a multi-year investigation of Borzilleri's allegations, including a review of tens of thousands of documents, interviews with more than thirty witnesses, consultations with regulatory experts within the U.S. Department of Health and Human Services, and the retention of

expert consultants.[12] In this light, we agree with the district court that Borzilleri's arguments ultimately constitute no more than disagreements with the government's judgment about the contours of the investigation and its potential for success. See Borzilleri, 2019 WL 5310209, at *2-3. Borzilleri therefore failed to demonstrate the transgression of constitutional limits or fraud on the court, and the district court properly granted the government's motion to dismiss.[13]

Affirmed.

---

[12] In its briefing to the district court, the government offered to formally "attest to these facts regarding its investigative efforts in a declaration," but the district court apparently never took the government up on its offer. This is unsurprising. The government's representations that it undertook its own substantial investigatory efforts are not really in dispute. Although Borzilleri quarrels with the government's tactics (for example, before the district court, he lamented that the government only formally deposed one defendant witness), his own declaration to the district court documents the government's extensive investigatory efforts, however misdirected Borzilleri believes they may have been. In any event, as we have explained, the government was not obligated to establish that it had expended a certain amount of investigatory effort before moving to dismiss the qui tam suit.

[13] Borzilleri argues in the alternative that his claims about the inadequacy of the government investigation were sufficiently plausible to warrant discovery from the government and an evidentiary hearing. We review a trial court's refusal to grant discovery for abuse of discretion, see Markham Concepts, Inc. v. Hasbro, Inc., 1 F.4th 74, 86 (1st Cir. 2021), and we find none. As explained above, a relator seeking discovery from the government regarding its reasons for dismissing a qui tam action must make a substantial threshold showing of impropriety of the sort we have discussed. See supra Section III. Here, Borzilleri failed to do so.